IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL NO. 1:10-CR-110 |
| | § | (Judge Thad Heartfield) |
| DARIUS FEDOR VAXTER | § | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE FOR THE EASTERN DISTRICT OF TEXAS:**

COMES NOW the below signed Assistant United States Attorney and moves this Honorable Court to DENY defendant's motion to suppress and as good cause says,

I.

## FACTS OF THE STOP

**Observed traffic violations/probable cause for violation stop:**

At hearing in this matter, the Government would show that at approximately 10:50 AM on August 24, 2010, D/S Chris Berry of the Jefferson County Sheriff's Office observed the defendant driving a 2010 Mazda, bearing Mississippi rental registration REC 028 traveling east bound in IH-10 near mile marker 839 in Jefferson County Texas, Eastern District of Texas. The defendant's car was clocked traveling at 70 mph less than one car length from the vehicle immediately in front of his vehicle. The defendant, therefore, was following too closely in violation of governing Texas traffic control laws.

*U.S. v. Inocencio*, 40 F.3d 716 (5th Cir. 1994). As this aspect of the defendant's driving pattern was a violation of applicable Texas traffic statute, the violation constitutes a valid, *non-* pretextual, probable cause basis for a traffic stop. *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed. 2d 89 (1996), *see also United States v. Brigham,* 382 F.3d 500(5th Cir. 2004); *Jackson v. United States,* 344 F.2d 400 (5th Cir. 1965); *United States v. Roberson,* 6 F.3d. 1088 (5th Cir. 1993).

After observing said traffic violation, D/S Berry activated his emergency lights at mile marker 839. Just after D/S Berry activated his lights and pulled in behind the defendant, he noticed the defendant throw some type of object out of the driver's side window of the vehicle in contravention of Texas Statutes that govern the disposal of refuse. This act of littering in the Deputy's presence provided an additional, non-pretextual basis for D/S Berry's traffic stop. *See* Section 365.012(a), Texas Health and Safety Code; *McAnally v. State*, 2009 WL 3956749.

The defendant did not immediately pull to the emergency lane. Instead he "slow stopped" not pulling to the side of the road ultimately until mile marker 843. When D/S Berry walked up to the driver's side window, he immediately detected the odor of burning marijuana. When D/S berry inquired if Vaxter was smoking marijuana, the defendant answered in the affirmative and stated he had thrown the burning marijuana cigarette ("blunt") out of the car window immediately before pulling his vehicle to the shoulder of the road. It is well established that the odor of marijuana, when detected as emanating from a vehicle by a properly qualified officer, provides probable cause for the search of

that vehicle. *U.S. v. Reed*, 882 F.2d 147,149 (5th Cir. 1989) see also, *U.S. v. Lork*, 132 Fed. Appx. 34 (5th Cir. 2005).

**Observed drug trafficking activity, *Terry* stop:**

Prior to (10:30 AM) observing defendant's above referenced violations of Texas statute, D/S Berry had been contacted by Harris County Deputy Sheriff (Narcotics) Frank Fullbright[1] and informed that he (Fullbright) had probable cause to believe that the was involved in drug trafficking activity.

D/S Fullbright's probable cause was based on the following observations made by him that same morning of the defendant and con-conspirator, Vera Scarbrough. While looking for possible narcotics violators in the vicinity of La Quinta Inn, 11999 East Freeway, Houston, Texas on the morning of August 24, 2010 D/S Fullbright noted:

   a) a 2010 Mazda rental car bearing Mississippi registration REC-028 parked in from of room 127;

   b) a 2010 Chrysler Sebring rental car bearing Tennessee registration 965-YJM, parked nearby;

After determining ownership of the rental cars, D/S Fullbright contacted the rental agencies and determined that the Sebring had been rented on 8/23/2010 in Pascagoula, MS by one Lisa Latoy Lee. Lee was determined to live in Moss Point MS.  D/S Fullbright next determined that room 127 was rented to the defendant with a listed address of 4437 Gautier St., Moss Point, MS.. D/S Fullbright then ran a criminal history check on the defendant and determined that he (defendant) had an extensive criminal

---

[1] It may be significant to note that D/S Fullbright is a seasoned narcotics detective with decades of experience and hundreds of narcotics arrests within his field of experience.

history to include multiple arrests for narcotics trafficking. After collecting this information, D/S Fullbright decided to conduct surveillance of the two rental vehicles and room 127. At 9:45 AM Fullbright observed the defendant exit room 127 and walk to room 120. The defendant entered that room (later determined to be rented to Vera Scarbrough). As the defendant walked from room to room, he was carrying a plastic back that appeared to contain brick shaped objects that appeared similar to kilograms of cocaine HCL based upon the shapes their weight made in the plastic bag.

Fifteen minutes later, the defendant was observed leaving room 120. He again carried the same plastic bag, but it now appeared to be empty. The defendant reentered room 127. Shortly after that, Vera Scarbrough was observed leaving the area of room 120 and getting into the Sebring rental car. Scarbrough left the hotel parking lot in the Sebring while D/S Fullbright maintained surveillance of the defendant's room. A short time later, the defendant left room 127, entered the Mazda rental car and left the hotel with D/S Fullbright following behind. The defendant entered IH-10 and headed eastbound.

Based on D/S Fullbright's training and experience he knew:

a) IH-10 is a major narcotics corridor serving Houston supplied contraband to locations along the eastern seaboard and the gulf coast;

b) it is common for drug traffickers to employ rental cars in an attempt to avoid law enforcement detection;

c) it is quite common for narco-traffickers to employ third parties to actually rent the cars they use for their illicit trade as a further attempt to defeat law enforcement detection;

d) it is common for drug traffickers to make brief visits to the Houston area in such

rental cars in order to meet with their sources of drug supply. LaQuinta Inn is one such hotel that is often employed by visiting narco-traffickers while they briefly stay in Houston;

e) it is common for narco-traffickers to employ couriers ("mules") to actually carry their illicit drugs in an attempt to shield themselves from law enforcement;

f) it is common for narco-traffickers to direct those "mules" to travel in tandem with them in separate cars to further this ruse;

g) it is common for narco-traffickers to travel a few miles ahead of or behind their "mules" as they travel east-bound on IH-10;

h) it is quite common for narco-traffickers to employ innocuous looking "mules" (to include, white haired, elderly women such as Scarbrough) in an attempt to avoid detection of their criminal scheme.

D/S Fullbright continued to follow the defendant while attempting to contact law enforcement officers to conduct investigative stops of both Scarbrough and the defendant. Jefferson County, Texas law enforcement officers, to include D/S Berry were placed on stand-by and told that D/S Fullbright had reasonable suspicion to believe that the defendant and Scarbrough were transporting narcotics through the Eastern District of Texas.  As D/S Fullbright approached mile marker 818 in Chamber's County, Texas, he noted that Scarbrough had already been pulled over during a routine traffic stop by DPS Trooper Ihnen. Fullbright discontinued his surveillance of the defendant and pulled up to Trooper Ihnen's traffic stop. Trooper Ihnen had already requested consent to search Scarbrough's car by that time. He had asked Scarbrough if everything in the car was here and had been told (by her) that there was "something" in the trunk of the car that did not belong to her. When consent to search the car was given by Scarbrough, Trooper Ihnen and D/S Fullbright discovered three kilograms of cocaine HCL in the trunk of the vehicle.

Scarbrough was then read her *Miranda* rights and agreed to answer questions. D/S Fullbright asked if Scarbrough was traveling with the defendant and if the cocaine belonged to him. Scarbrough answered in the affirmative.

D/S Fullbright then left Trooper Ihnen's traffic stop location and radioed D/S Berry to inform him of the discovery of cocaine in Scarbrough's car and her post *Miranda* admissions. When D/S Fullbright reached (by radio) D/S Berry, he (Berry) had already stopped the vehicle the defendant's car and was in the first stages of conducting his road-side investigation[2]. When D/S Berry was contacted by D/S Fullbright with the information that three kilograms of cocaine HCL had been discovered in Scarbrough's rental car and that Scarbrough had confessed post *Miranda* that the cocaine HCL belonged to the defendant, he (the defendant) was then placed under arrest for conspiracy to possess with intent to distribute cocaine HCL.

It is well established that law enforcement officers may conduct an investigatory detention/stop based upon reasonable articulable suspicion. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968)*, See also, United States v. Pompa ,* 434 F.3d 800 (5th Cir. 2005). As a consequence, the information shared by D/S Fullbright with D/S Berry provides am independent basis for the defendant's stop in addition to the facts and circumstances surrounding the violations of Texas statute the defendant committed in D/S Berry's presence (as set out above).

---

[2] D/S Berry will testify that at that point he had detected the odor of marijuana and had asked the defendant if he (defendant) had been smoking marijuana. But no further actions had been taken before D/S Fullbright reached him by radio.

It maybe important to note here that objective facts that are meaningless to the untrained can be combined with permissible deductions to form a legitimate basis for suspicion of a person. *U.S. v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed. 2d 621(1981). It is equally without doubt that innocent behavior, when considered under the totality of the circumstances, may be sufficient to establish reasonable suspicion. *U.S. v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed. 2d 1 (1989).

An investigatory detention is proper if based on reasonable suspicion "that criminal activity is afoot." *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968). "Reasonable suspicion" is considerably less than that which is required to show probable cause. *United States v. Rideau*, 969 F.2d 1572, 1574 (5th Cir. 1992)(en banc). To satisfy the Fourth Amendment, there must be some minimal level of objective justification for the officer's actions, measured in light of the totality of the circumstances. *United States v. Sokolow*, 490 U.S. 1, 6-8, 109 S.Ct. 1581, 104 L.Ed. 2d 1 (1989). That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed. 2d 527 (1983). In evaluating the validity of a stop such as this, the Court must consider the totality of the circumstances - the whole picture. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed. 2d 621 (1981). D/S Fullbright articulates facts in this case that when considered as a whole, are just as strong, if not stronger than the facts articulated by the agents in *Sokolow, Rideau, Gates*, and *Cortez*. All these facts and observations led to a reasonable articulable suspicion by a well trained and experienced officer that criminal activity was occurring. The United States Supreme Court has

emphasized the importance of allowing officers to "draw on their own experience and specialized training" to make just such inferences from the facts available to them. *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744 (2002).

As the Supreme Court stated in *Sokolow*, any of the factors standing alone is not by itself proof of illegal conduct and may be quite consistent with innocent travel. *Sokolow*, 109 S.Ct. at 1586. But taken together they amount to reasonable suspicion. *Id* at 1586. Each of the factors relied upon by D/S Fullbright[3] contributed to a reasonable suspicion of criminal activity when taken as a whole in conjunction with D/S Fullbright's training and experience. After being informed of the defendant's behavior (and the concerted acts of Scarbrough) by D/S Fullbright, D/S Berry was entitled to stop and detain the defendant for a reasonable time[4] to allow D/S Fullbright to pursue a means of investigation likely to confirm or dispel their suspicions.

II.

**DEFENDANT'S CONTENTIONS**

Defendant vaguely contends in boiler plate fashion that the government conducted

---

[3] And conveyed to D/S Berry.

[4] The Supreme Court has consistently rejected "bright line" tests to determine if investigatory detentions (and the length thereof) are constitutional preferring rather a totality of the circumstances determination of reasonableness. *See Ohio v. Robinette*, 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed. 2d 347 (1996)

a warrantless search[5] of the defendant's vehicle in violation of the Fourth Amendment. The consequently seeks the suppression of "all evidence and information" obtained by the government as a result of that warrantless search.

III.

**GOVERNMENT'S RESPONSE**

**Probable Cause search**:

The government concedes (*without* conceding error) that D/S Berry conducted a warrantless search of the defendant's vehicle.  An automobile which may be moved and maybe searched without a warrant if there is probable cause.  *Chambers v. Maroney*, 399 U.S.42, 90 S.Ct. 1975, 261 L.Ed. 419 (1970).  This exception is based on the reduced expectation of privacy associated with vehicles and their inherent mobility.  *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed. 2d 406 (1985).

Without re-asserting the facts and arguments offered previously, it is the Government's position that D/S Fullbright and D/S Berry articulate a "reasonable suspicion" to justify a detention of the defendant and that probable cause existed to justify a warrant-less search of defendant's vehicle. It is also the government's position that the smell of burning marijuana detected at road-side by D/S Berry provided an additional basis for the subsequent warrantless  search of the defendant's vehicle. *U.S. v. Reed*, 882 F.2d 147,149 (5th Cir. 1989) see also, *U.S. v. Lork*, 132 Fed. Appx. 34 (5th Cir. 2005).

**Inventory search:**

---

[5] It may be significant to note that the defendant does **not** contest the validity of the *traffic stop* discussed as background above.

Another well established principle of law is the constitutional basis for inventory searches of automobiles incident to the arrest of the drivers of those vehicles. When D/S Fullbright informed D/S Berry of the discovery of the cocaine in Scarbrough's rental vehicle and her post *Miranda* confession that the cocaine belonged to the defendant, the defendant was arrested at road side. Pursuant to the long standing policy of the Jefferson County Sheriff's Department, D/S Berry then conducted an inventory search of the defendant's rental vehicle. During that search, a roll of gray duct tape was discovered. No contraband was found in the defendant's rental vehicle.

Courts have long recognized such "inventory searches" as valid exceptions to the warrant requirement of the Fourth Amendment. *U.S. v. Prescott*, 599 F.2d 103 (5th Cir. 1979); *U.S. v. Andrews*, 22 F.3d 1328 (5th Cir. 1994). Inventory searches are excepted from the warrant requirement because they are not intended to uncover evidence. Rather, they are designed to serve a care-taking purpose and are intended to protect the owner's property. So long as such searches are conducted pursuant to standard regulations established by the arresting agency, they pass constitutional muster. *Florida v. Wells*, 495 U.S. 1, 4-5, 110 S.Ct. 1632, 109 L.Ed. 2d 1 (1990); *Colorado v. Bertine*, 479 U.S. 367, 374, 107 S.Ct. 738, 93 L.Ed. 2d 739 (1987); *U.S. v. Como*, 53 F.3d 87,92 (5th Cir. 1995).

D/S Berry's inventory search was conducted pursuant to the standard regulations of the Jefferson County Sheriff's Office.

IV.

## **CONCLUSION**

The evidence will show at the hearing in this matter that the above described detention, search, seizure and subsequent arrest of the defendant was based reasonable suspicion and probable cause. The evidence will further show that the search of the defendant's car subsequent to arrest was also conducted pursuant to the "inventory search" exception to the warrant requirement of the Fourth Amendment.

WHEREFORE, premises considered, the government contends that after a hearing, held either before trial or at the time the Government seeks to introduce the complained of evidence, this Honorable Court should **deny** defendant's motion to suppress evidence.

WHEREFORE, the below signed Assistant United States Attorney moves this Honorable Court to schedule defendant's motion to suppress for hearing.

                                                  Respectfully Submitted,

                                                  John M. Bales
                                                  United States Attorney

      By:         /s/ John A. Craft
                      John A. Craft
                      Assistant United States Attorney
                      350 Magnolia, Ave., Ste. 150
                      Beaumont, TX 77701
                      (409) 839-2538

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been sent to Russel J. Wright, Esq., Counsel for the defendant, at 1025 S. Redwood, Kountze, TX 77625 via efile and U.S. Mail this 21st day of October, 2010.

                                           /s/ John A. Craft  
                                           John A. Craft  
                                           Assistant United States Attorney